JERRY D. STAYTON *v.* THOMAS FUNKHOUSER ET AL.

[No. 969A161. Filed November 25, 1970. Rehearing denied December 22, 1970. Transfer denied February 16, 1971.]

*George T. Patton, Sam Mirkin, Edward C. Hilgendorf, Patton, Mirkin & Hilgendorf,* of South Bend, for appellant.

*Arthur A. May, Robert J. Konopa, Crumpacker, May, Levy & Searer,* of South Bend, for appellees.

HOFFMAN, P.J.—This is an action brought by plaintiff-appellant against appellees for personal injuries sustained when appellant was struck in the eye by an object thrown by the blade of a rotary lawn mower owned by appellee-Skipper and being operated by appellee-Funkhouser.

The trial court, on oral motions of defendants-appellees, at the close of plaintiff-appellant's evidence, instructed the jury to return a verdict in favor of defendants-appellees, which the jury accordingly did. Judgment was then rendered on the verdict that appellant take nothing by reason of his complaint.

Appellant appeals from the judgment rendered on the verdict, assigning as error the overruling of the motion for a new trial. Such motion contains four specifications of error, which are as follows:

1.  The verdict of the jury is contrary to law.
2.  The decision of the court is contrary to law.
3.  The court erred in granting defendants' motions, made at the close of plaintiff's evidence, to instruct the jury to return a verdict for the defendants.

4. Error of law occurring at the trial, as follows:

    A. The court erred in sustaining the motions of the defendants for a directed verdict made at the close of plaintiff's evidence.

Generally stated, the issue presented by this appeal is whether the owner and/or the operator of a rotary lawn mower, the blade of which strikes an object and hurls it approximately fifty feet striking another person, is charged with a legal duty to the injured person.

A concise summary of the facts is as follows:

The litigants in this appeal were all neighbors in Osceola, Indiana. On June 5, 1966, because appellee-Funkhouser's lawn mower had broken down, appellee-Skipper loaned Funkhouser his tractor-type rotary blade, power lawn mower. Appellant-Stayton also planned to use the mower on that date to level a load of top soil which had been delivered to his backyard. Appellant was to use the mower when appellee-Funkhouser finished mowing his lawn. Both Funkhouser and appellant had borrowed the mower on previous occasions.

Appellant was in his backyard shoveling the dirt, spreading it out. Appellee-Skipper, the owner of the mower, was inside his house. Appellee-Funkhouser was mowing his lawn. When appellee-Funkhouser was approximately fifty feet from appellant with the discharge opening in the cowling of the mower pointed in appellant's general direction, appellant heard two sounds, similar to gunshots, and simultaneously was struck in the left eye and temple by a dense, not extremely jagged object. Appellee-Funkhouser also heard a noise, but only one, and to him it did not sound like a gunshot.

Seeking compensation for his injuries appellant sued alleging negligence on the part of both of his neighbors (appellees here)—in a single complaint. Appellant prayed for $100,000 damages for a complete loss of vision to his left eye.

Appellant's second amended complaint alleged negligence on the part of appellees as follows:

"6.   That the carelessness and negligence of defendant U. L. Skipper consisted of one or more of the following, to-wit:

(a)   That he failed to warn defendant Thomas D. Funkhouser to clear his said lawn of stones, pebbles, sticks, twigs, pieces of metal and wife [wire], prior to using said mower.

(b)   That he failed to warn defendant Thomas D. Funkhouser to keep said mower a sufficient distance away from other persons while it was being operated.

(c)   That he failed to warn defendant Thomas D. Funkhouser to warn other persons nearby to stay a sufficient distance away from said mower while it was being operated.

(d)   That he failed to warn defendant Thomas D. Funkhouser to keep the discharge opening for grass cuttings turned away from the direction of other persons who might be nearby.

"7.   That the carelessness and negilgence of defendant Thomas D. Funkhouser consisted of one or more of the following, to-wit:

(a)   That he failed to clear his said lawn of stones, pebbles, sticks, twigs, pieces of metal and wire, prior to using said mower.

(b)   That he failed to keep said mower a sufficient distance away from plaintiff while it was being operated.

(c)   That he failed to warn plaintiff to stay a sufficient distance away from said mower while it was being operated.

(d)   That he failed to keep the discharge opening for grass cuttings turned away from the direction of plaintiff.

"8.   That by reason of, and as a direct and proximate result of, the negligence of both temporarily and permanently in that he suffered lacerations of the face and a torn retina of his left eye; that as a result of said injuries, plaintiff suffered the complete loss of sight in said eye."

Appellant contends that the verdict of the jury and the judgment thereon is contrary to law, arguing that evidence of probative value was introduced from which the jury could have found negligence on the part of both appellees.

A directed verdict removes the case from the province of the jury. Because the jury does not serve its usual function and due to the severity of the result for plaintiff-appellant we must constantly be cognizant of Article 1, § 20 of the Constitution of Indiana, which provides:

"In all civil cases, the right of trial by jury shall remain inviolate."

The burden of producing facts to establish a duty was upon appellant. In reviewing the record, which is composed of appellant's evidence, we may not weigh the evidence. We must look only to the evidence most favorable to plaintiff-appellant, together with all legitimate inferences to be drawn therefrom. Only if there is a total absence of evidence of probative value or legitimate inference upon a material point—here a legal duty—may we sustain the action of the trial court. *Whitaker, Admr.* v. *Borntrager*, 233 Ind. 678, 122 N. E. 2d 734 (1954) ; *Gwaltney Drilling, Inc.* v. *McKee*, 148 Ind. App. 1, 259 N. E. 2d 710, 22 Ind. Dec. 48 (1970) ; *Stover* v. *Fechtman*, 140 Ind. App. 62, 222 N. E. 2d 281 (1966) ; *Huttinger* v. *G. C. Murphy Company*, 131 Ind. App. 642, 172 N. E. 2d 74 (1961), (Transfer denied) ; *Moslander* v. *Moslander's Estate*, 110 Ind. App. 122, 38 N. E. 2d 268 (1941).

Appellant's second amended complaint alleged negligence. The elements of actionable negligence are set out in *Neal, Admr.* v. *Home Builders, Inc.*, 232 Ind. 160, at 167-168, 111 N. E. 2d 280, at 284 (1953), wherein Judge Bobbitt, speaking for our Supreme Court, stated:

"Actionable negligence consists of (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant." (Citing authorities.) See also: *Rust, et al.* v. *Watson*, 141 Ind. App. 59, 67, 215 N. E. 2d 42 (1966), (Transfer denied).

The issue in the instant case rests upon the first element of actionable negligence. If appellant failed to produce facts upon which a duty could be found, there can be no recovery. *Liberty Mut. Ins. Co.* v. *Stitzle*, 220 Ind. 180, 187, 41 N. E. 2d 133, 139 A.L.R. 1391 (1942).

Appellant argues that the duty of appellee-Skipper arises because of his superior knowledge of the characteristics of the mower and of the inherent dangers in the use of the machine. Appellant contends that appellee-Skipper's superior knowledge of the mower and the fact that a rotary mower is "inherently dangerous" imposes a duty upon him to warn appellee-Funkhouser as alleged in appellant's second amended complaint.

The definition of "inherently dangerous" was stated by our Supreme Court in *Neal, Admr.* v. *Home Builders, Inc.*, *supra*, 232 Ind. 160, at 174, 111 N. E. 2d 280, at 287 (1953) :

" 'Inherently dangerous' means that danger is contained in and is an inherent part of the constitution of the instrumentality or condition itself, at all times, in such a manner as to require special precautions to prevent injury, not simply danger arising from mere casual or collateral negligence of others." (Citing authorities.)

We do not agree with appellant's contention that the rotary mower in the instant case is "inherently dangerous." However, this is not to say that a rotary lawn mower may never be an "inherently dangerous instrumentality." In the instant case there is no allegation that the mower was defective or functioning improperly. Under the right circumstances, supported by adequate proof, a certain rotary lawn mower in the control of a certain individual, or individuals, could be "inherently dangerous", but such circumstances are not present in the instant case.

There are no degrees of care in Indiana. The only degree of care is that which an ordinarily prudent person would exercise under the same or similar circumstances. *Neal, Admr.* v. *Home Builders, Inc., supra*, 232 Ind. 160, 168, 111 N. E. 2d 280 (1953) ; *Perkins* v. *Sullivan*, 127 Ind. App. 426, 428, 143 N. E. 2d 105 (1957).

Likewise, there are no degrees of duty in the State of

Indiana. As stated by our Supreme Court in *Union Traction Co.* v. *Berry, Admr.,* 188 Ind. 514, at 520, 121 N. E. 655, at 657, 32 A.L.R. 1171 (1919) :

"If there can be no degrees of negligence, it must follow that there can be no degrees of duty. Duty is an absolute term. The law requires nothing more than duty; it will excuse nothing less. The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation is shown as gives rise to such duty. In determining whether the relation shown gives rise to a duty to use care, the court decides a pure question of law." See also: *Thompson* v. *Ashba,* 122 Ind. App. 58, 102 N. E. 2d 519 (1951) ; *Neal, Admr.* v. *Home Builders, Inc., supra.*

In his brief appellant cites two cases in which plaintiffs, who were struck by objects thrown from rotary lawn mowers, were allowed to recover, or at least a duty was found.

In *Beaver* v. *Costin,* 352 Mass. 624, 227 N. E. 2d 344 (1967), the Supreme Judicial Court of Massachusetts sustained plaintiff-appellant's exceptions to a directed verdict. In *Beaver* the only defendant was the operator of the rotary type power mower. The evidence most favorable to plaintiff-appellant was that the mower was being operated on a slope and that debris was being ejected from the left side of the mower—being thrown in the direction of the plaintiff. Thus, defendant-appellee was charged with actual or constructive knowledge of that fact. Plaintiff-appellant was riding in a vehicle with the window down and was struck in the face, receiving a "dirt wound." On the basis of this evidence the court held that the defendant had a legal duty and the case should have been allowed to go to the jury. The court at 626 of 352 Mass., at 346 of 227 N. E. 2d said:

"The jury would have been warranted in finding that the defendant should have foreseen that the operation of the power mower in a manner which allowed rocks and other

debris to be thrown into the road traveled by others created an unreasonable risk of harm. Motter v. Snell, 250 Iowa 1247, 95 N. W. 2d 735, 98 N. W. 2d 746."

*Motter* v. *Snell*, 250 Iowa 1247, 95 N. W. 2d 735 (1959), was affirmed by operation of law, the Iowa Supreme Court being evenly divided in opinion as to affirmance or reversal of the case. The judgment of the trial court was entered upon a verdict in favor of plaintiff-appellee. Defendant-appellant's twelve-year old son was operating a rotary type power mower when plaintiff-appellee, an eleven-year old boy standing on the sidewalk, was struck in the eye by an undetermined object.

One specification of error asserted in *Motter* was that the evidence was insufficient and the trial court erred in submitting the issue of negligence to the jury. The evidence most favorable to plaintiff-appellee gave credence to the allegation of the plaintiff that there was much debris in the yard, including chips of brick which remained from the removing of a brick chimney from the house some years earlier. The Supreme Court of Iowa at 738 of 95 N. W. 2d stated:

> "From the above testimony it is apparent there was substantial testimony that the chips of brick amounted to an unusual condition in the yard from other than natural causes. The area being mowed by a rotary type power mower was dangerous to persons near or in the area being mowed and defendant as a reasonably prudent person knew or should have known this and taken proper steps for reasonable and necessary safety of plaintiff."

Our interpretation of these two cases is that the duty in *Beaver* v. *Costin, supra,* arose as a result of knowledge, actual or constructive, on the part of the operator that debris was being thrown from the mower. In *Motter v. Snell, supra,* the duty arose as a result of knowledge, actual or constructive, on the part of defendant-appellant of the unusual condition of the yard due to other than natural causes.

In both cases the duty was based upon knowledge of the

person being charged with the duty. This is in line with the law in Indiana as stated in *Hunsberger* v. *Wyman,* 247 Ind. 369, at 373, 216 N. E. 2d 345, at 348 (1966):

"Where there is no knowledge, actual or constructive, of danger or peril on the part of a defendant, he cannot be charged with negligence. *Kennedy* v. *Southern Fire Brick and Clay Company, Inc.* (1927), 86 Ind. App. 629, 159 N. E. 1."

In view of the ruling of the trial court on appellees' motions for a directed verdict, the evidence must be reviewed in a light most favorable to plaintiff-appellant. Such evidence, from the record before us, discloses the following:

The lawn mower was functioning properly. All of the parties to this appeal had used the lawn mower in the past and were familiar with its operation. No one testified that anything other than grass had ever been ejected from *this* lawn mower. Appellee-Skipper testified that in the past, while using another rotary mower, he had struck a chicken bone and thrown it through a basement window, approximately three feet away. The mower was inspected after the injury and there was no evidence on the blade that it had struck a foreign object. Instruction booklets for rotary lawn mowers generally contain a warning that objects may be thrown out. Appellee-Skipper read the instruction booklet for the lawn mower in question. When appellee-Funkhouser borrowed the mower the first time instructions were given on the operation of the machine, but they did not include a warning that objects may be thrown from the opening in the mower. The mower was set to cut at a height of 2½ inches.

Appellee-Funkhouser's lawn was approximately one year old. The soil was sandy and dry. In preparing the lawn Funkhouser had dragged a bed spring across the ground. Peat moss had been spread on the ground, it had been raked, fertilized, seeded and on numerous occasions the Funkhousers had picked up rocks, twigs, toys and other foreign objects. Appellant-

Stayton had seen rocks in the Funkhouser yard while walking across the area on his way to a Little League ball game, sometime before the incident. This neighborhood was in a wooded area. It was not alleged that the debris on the lawn came from other than natural conditions. There were the normal amount of stones and twigs in the yard on the day of the incident. Funkhouser did not see anything ejected from the mower, other than grass, on the day of the incident. The only unusual occurrence on the day of the unfortunate incident was at the time of the injury to appellant. Funkhouser's lawn was "pretty average" having some thick and some thin places on the day of the incident. Appellant was aware of appellee mowing the lawn and did not feel that he was in danger.

It is our opinion that appellant failed to establish the requisite knowledge on the part of either appellee which would allow the trial court to find the existence of a legal duty. Without such knowledge appellees do not come within the rule as stated in *Chicago, etc., R. Co.* v. *Dinius,* 170 Ind. 222, at 231, 84 N. E. 9, at 12 (1908) :

"The rule well affirmed by the authorities is that under the law a person is required to anticipate or foresee and guard against what usually happens or is likely to happen, but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such cases is not whether the injurious result or consequence was possible, but whether it was probable, that is, likely to occur according to the usual experience of persons. A wrongdoer cannot be held responsible for a consequence which is merely possible according to occasional experience, but only for a result or consequence which is probable according to the ordinary and usual experience of mankind." (Citing authorities.) See also: *Hoosier Cardinal Corp.* v. *Brizius,* 136 Ind. App. 363, 372-373, 199 N. E. 2d 481 (1964), (Transfer denied).

Appellant has failed in his burden to introduce facts upon which the required knowledge on the part of either appellee

would justify the imposition of a legal duty. However, we do not hold that an injured party may never recover from the owner or operator of a rotary mower that has propelled a foreign object and injured him.

Neither appellee may be charged with actual or constructive knowledge that an object might be hurled a distance of fifty feet inflicting injury on appellant. This was not a result or consequence which was probable according to the ordinary and usual experience of mankind.

Appellant has failed to establish that the condition of appellee-Funkhouser's lawn was abnormal, *i.e.*, was in an unusual condition due to other than natural causes.

Appellant would have us find a legal duty on the part of a homeowner to minutely inspect his yard before mowing with a rotary lawn mower. To so hold would impose an impossible burden and, in effect, make one who operates a rotary lawn mower an insurer of the world at large.

Notwithstanding that which has been stated above, appellant could not charge appellees with the requisite knowledge and plead ignorance on his own behalf. If a legal duty were imposed, appellant would have the insurmountable task of negating the rule recently re-enunciated by our Supreme Court in *Hunsberger* v. *Wyman, supra,* at 374 of 247 Ind., 348 of 216 N. E. 2d, which is as follows:

> "In any negligence action, both parties are obligated to exercise ordinary and reasonable care to avoid injury. This includes the duty to observe and appreciate danger or threatened danger. 'A person is required to make reasonable use of his faculties and senses to discover dangers and conditions of danger to which he is or might become exposed, . . .' 21 I.L.E. Negligence, § 85, p. 341. *Day* v. *Cleveland, C., C. & St. L. R. Co.* (1894), 137 Ind. 206, 36 N. E. 854; *Stewart* v. *Pennsylvania Co.* (1892), 130 Ind. 242, 29 N. E. 916."

No legal duty is imposed upon the owner or the operator of a rotary lawn mower in the absence of evidence of probative

value that the lawn mower had been, or was, throwing foreign objects, or that the condition of the area being mowed was contaminated as a result of other than natural causes or of a dangerous or unusual character as a result of natural causes.

Judgment affirmed.

Pfaff, J., concurs; Sharp, J., concurs with opinion; White, J., concurs in result.

## CONCURRING OPINION

SHARP, J.—While I concur with the result reflected in the majority opinion I do not agree with all of its reasons and reasoning. My differences are of such nature that they should be briefly stated.

The record in this case clearly discloses that the Appellant, Jerry D. Stayton, was injured while he was a bystander on his own property some 50 feet from the Appellee Funkhouser who was operating a tractor type rotary lawn mower in his own backyard. The record fails to disclose the circumstances of incurred risk or contributory negligence as a matter of law and the decision of the trial court in directing the verdict at the end of the plaintiff's evidence cannot be justified on this basis. See *Rouch* v. *Bisig*, 147 Ind. App. 186, 258 N. E. 2d 883 (1970) and the authorities cited therein.

My basic disagreement with the majority relates to that part of the majority opinion which purports to describe the duty of the operator of a rotary power lawn mower owed to a bystander who, in this case, was nearby on his own property. It is clearly implicit in *Beaver* v. *Costin*, 352 Mass. 624, 227 N. E. 2d 344 (1967), that the operator of a rotary power lawn mower is charged with the duty to take reasonable precautions to operate the same so that rocks or other debris will not be ejected and thrown in the direction of a bystander, particularly one located nearby on his own premises. As the majority opinion indicates in its discussion of *Beaver* the

operator is charged with the actual *or constructive* knowledge that a rotary power lawn mower will pick up rocks and other debris and throw them for some distance. The majority opinion states Appellee Funkhouser did not have the requisite knowledge to sustain the finding of a duty. Knowledge can be either actual or constructive. Constructive knowledge means the law charges him with that knowledge, saying the reasonably prudent man would have such knowledge. It would be the function of a jury to decide if Appellee Funkhouser knew *or should have known* of the danger of rocks and debris being thrown from his lawn mower in this set of circumstances as guided by the reasonably prudent man standard if Appellant carried his burden of proof as to the breach of the duty to use reasonable care. This interpretation is also borne out by the opinion of Justice Thorton in *Motter* v. *Snell*, 250 Iowa 1247, 95 N. W. 2d 735 (1959), which is also referred to and quoted in the majority opinion. In his opinion Justice Thornton selects a wide range of authorities which clearly establishes the duty of the operator of a rotary power lawn mower to operate the same in such a manner so as not to throw rocks and debris toward or upon a bystander. In this case there is substantial evidence of probative value to charge the Appellee Funkhouser with the duty of operating this particular rotary power lawn mower in such a manner so as to not cause it to throw rocks or debris in the direction of the Appellant who was standing in his own backyard.

Recently in *Sills* v. *Massey-Ferguson, Inc.*, 296 F. Supp. 776, 781 (N.D. Ind. 1969), Judge Eschbach stated:

> "As to the foreseeability test, this court holds that a person standing approximately 150 feet from a lawn mower utilizing rotary blades is foreseeably within the zone of danger that exists if the product is defective in design or manufacture. . . . . The zone of liability is commensurate with the zone of foreseeable risk."

Admittedly, the primary thrust of *Sills* v. *Massey-Ferguson* relates to strict liability but the above quotation was made in

the context in considering the ordinary man—foreseeability standard of care.

The majority opinion states:

"Neither Appellee may be charged with actual or constructive knowledge that an object might be hurled a distance of 50 feet inflicting injury on Appellant. This was not a result or consequence which was probable according to the ordinary and usual experience of mankind."

I believe that the above statement in the majority opinion conflicts with the reasoning and result in the *Beaver* case, in the *Motter* case, and in the above quoted passage from the *Sills* case. Further, I believe that in terms of the ordinary and usual experience of mankind it is highly probable that the average rotary lawn mower will pick up and throw rocks and debris causing injury to nearby bystanders. The existence of such duty is further substantiated in *Loonan Lumber Co.* v. *Wannamaker,* 81 S. D. 51, 131 N. W. 2d 78 (1964), in which case the operator of a mowing unit operated it in such a way so as to propel a rock through the window of the plaintiff's house approximately 75 feet away. The operator contended that the evidence shows no negligence on his part. However, the court rejected such argument and stated that the operator knew or should have known that the use of a rotary mower in the area involved was a hazard and danger to the persons and property in proximity thereto and that a rock, if touched by the rotary blade, would be hurled through the air toward the plaintiff's property. The existence of the some duty is rationalized in *Glenn* v. *Raleigh,* 246 N. C. 469, 98 S. E. 2d 913 (1957), although the judgment was reversed on errors in the instructions given by the trial court.

Thus, I would find in this case that a duty clearly existed on the part of the operator of the lawn mower to operate it in such a manner so as not to cause injury from flying debris and rocks to a bystander. I agree with the majority that a homeowner does not have the duty to "minutely" inspect his

yard before mowing with a rotary lawn mower. However, such an owner does have a duty to make reasonable inspections under all the circumstances where it is reasonably foreseeable that such mower will pick up rocks and debris and throw them so as to injure a bystander who has a right to be where he is standing nearby. This is neither an "impossible burden" nor does it make the operator of a rotary mower an insurer.

The basic question then becomes whether or not there is substantial evidence of probative value to show the breach of any such duty.

I have carefully searched the transcript and the evidence in this case as reflected in the transcript and I am unable to find any evidence or reasonable inferences therefrom to show a breach of the duty which is above described.

With the above thoughts I concur in the result reached in the majority opinion.

NOTE.—Reported in 263 N. E. 2d 764.